Ronald **WILLIAMS**, Appellant,
v.
**UNITED STATES** of America,
Appellee.
**No. 18406.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 22, 1964.

Decided June 25, 1964.

Wilbur K. Miller, Circuit Judge, dissented.

Mr. Donald L. Morgan, Washington, D. C., with whom Mr. John K. Mallory, Jr., Washington, D. C. (both appointed by this court), was on the brief, for appellant.

Mr. Daniel J. McTague, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Robert X. Perry, Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, WRIGHT and McGOWAN, Circuit Judges.

WRIGHT, Circuit Judge.

Appellant was convicted of robbery. 22 D.C.Code § 2901 (1961). He asks reversal of his conviction on two grounds: (1) admission by the trial court of hearsay evidence from a policeman, and (2) disclosure in open court of the division of the jury during deliberation, followed by a coercive supplemental instruction to the jury. We reverse on the latter ground.

I.

The Government's evidence showed that a wallet was picked from the pocket of a man on a crowded bus. A policeman was allowed to testify that a woman had told him she had seen the appellant with a wallet in his hand immediately after the victim's pocket was picked. The woman was also a Government witness, and in her testimony she affirmed the officer's hearsay. Pursuant to our prior opinions, we find no prejudicial error. Copes v. United States, 119 U.S.App.D.C. ——, —— F.2d ——, —— (No. 18,131, decided May 21, 1964), slip opinion p. 6; Baber v. United States, 116 U.S. App.D.C. 358, 324 F.2d 390 (1963); Harrod v. United States, 58 App.D.C. 254, 29 F.2d 454 (1928). See also 4 WIGMORE, EVIDENCE (3d ed. 1940) § 1130. For cases on both sides of this issue, see

Annot., *Extrajudicial Identification*, 71 A.L.R.2d 449 (1960); see particularly *id.* at p. 485 n. 13 for collection of cases holding *contra*.

It should be noted, however, that the danger of prejudice from hearsay testimony has not disappeared simply because some courts and text writers have found it admissible under some circumstances. In the ascertainment of truth, cross-examination remains the chosen instrument of the common law, and hearsay, particularly in support of, or partial replacement of, another witness' testimony, tends to undermine its effectiveness. In spite of the storied resourcefulness of trial lawyers, none has yet demonstrated an acceptable means for cross-examining hearsay.

## II.

The jury here, after five hours of deliberation, was unable to agree. Its foreman asked the trial judge two questions: "If the defendant is involved beyond a reasonable doubt, he is guilty?" and "Can the [two] alternate jurors replace the minority voters?" The trial judge answered these questions in open court and then gave the jury his version of the so-called *Allen* [1] charge. Shortly thereafter the jury returned to the courtroom with a verdict of guilty.

The jury's effort to replace its dissenting members made it unmistakably clear to the court, and to the public generally insofar as it was represented in the courtroom, that two jurors were hanging the jury. The pressure on this minority was further increased by the following colloquy between the court and the jury foreman:

"THE COURT: * * * Now who is the foreman?

"THE FOREMAN: I am.

"THE COURT: Will you rise, please. Don't tell me how you stand, that is, which way, and don't tell me numerically how you stand, but is it a clear minority or are you more or less evenly divided?

"THE FOREMAN: It's a clear minority, sir.

"THE COURT: A clear minority?

"THE FOREMAN: Yes, sir.

"THE COURT: You may be seated. I think then that I will say this to you: * * *"

Then, so that the "clear minority" would understand their duty as jurors, and over the objection [2] of defense counsel, the following supplemental charge was addressed to them along with the rest of the jurors:

"The object of the jury system is to secure unanimity by a comparison of views and discussion among the jurors themselves. It is by no means true that opinions of jurors may not be changed by conference in the jury room. Every juror should listen with deference to the arguments of the other jurors and with a distrust of his own judgment—or at least a questioning, which is a better way to

---

1. Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). For two critical disquisitions on the *Allen* charge, see Green v. United States, 5 Cir., 309 F.2d 852 (1962), and Huffman v. United States, 5 Cir., 297 F.2d 754, 755–759 (1962) (dissenting opinion of Judge Brown).

2. The colloquy concerning this objection between the trial court and defense counsel follows:

THE COURT: * * * Now, since they refer specifically to a minority, I think I'd better give them my own version of the 'Allen' charge, which will probably sink you.

"MR. NELSON: It would sink me. You see, if you answered their question and let them deliberate for a little while —I don't like the Allen charge, particularly in this instance.

"THE COURT: I have known it to work both ways, though usually it works for the Government. But there ought to be a verdict in this case. There's no sense in trying this again. I think I will answer these two questions and then I'll give them the 'Allen' charge. And your objection to that will be recorded. The 'dynamite' charge.

"MR. NELSON: Just don't use too much tonnage, Your Honor."

put it—a questioning of his own judgment, if he finds that the majority of the jury take a different view of the case from that which he himself takes.

"No juror should go to the jury room with a blind determination that the verdict should represent his own opinion of the case at the moment; nor should he close his ears to the arguments of the other jurors who are equally as honest and intelligent as himself.

"You should examine the issues submitted to you with an open mind and with candor and with proper regard and deference to the opinions of each other, and with a disposition to being convinced.

"Since some jury will have to decide this case some time, and there is no reason to suppose that clearer or more convincing evidence, one way or the other, will ever be produced in addition to that which you have heard, and there is no reason to suppose that the questions of law will change or be more clearly defined, if much the larger number of jurors take one view of the matter, then the minority should question their own views since it is not in agreement with most of the others.

"Nevertheless, you are instructed that the verdict of the jury should represent the opinion—honest and candid opinion—of each individual juror. The verdict must be the conscientious verdict of each individual juror and not a mere acquiescence in the conclusion of his fellow jurors simply because the minority is outnumbered. But when you find yourselves in a distinct minority, you should, as I have said, question the soundness of your reason for being in the minority. Don't forsake it just because you want to agree, but do forsake it if you test it again and find it wanting in reason and in logic.

"Now I will ask you to resume your deliberations and see if you can reach a conclusion."

### III.

A long time ago, in Burton v. United States, 196 U.S. 283, 307–308, 25 S.Ct. 243, 250, 49 L.Ed. 482 (1905), with reference to the practice of inquiring into the division of the jury, the Supreme Court commented as follows:

"We must say in addition, that a practice ought not to grow up of inquiring of a jury, when brought into court because unable to agree, how the jury is divided; not meaning by such question, how many stand for conviction or how many stand for acquittal, but meaning the proportion of the division, not which way the division may be. Such a practice is not to be commended, because we cannot see how it may be material for the court to understand the proportion of division of opinion among the jury. * * *"

Some time later, in Brasfield v. United States, 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345 (1926), the jury having failed to agree after some hours of deliberation and the trial court having inquired how it was divided, the Supreme Court said:

"We deem it essential to the fair and impartial conduct of the trial, that the inquiry itelf should be regarded as ground for reversal. * * * Such a practice, which is never useful and is generally harmful, is not to be sanctioned.

"The failure of petitioners' counsel to particularize an exception to the court's inquiry does not preclude this Court from correcting the error. * * *"

It is true that in *Brasfield* the trial court asked, and was advised, how the jury was divided numerically. Here the jury's question disclosed the numerical division and, under the circumstances, the trial court's repeated reference to the "clear minority" on the jury was at least

as coercive as the colloquy condemned in *Brasfield*.

## IV.

After the two dissenting jurors in this case had been rebuked by their fellow jurors, who proposed that they be discharged from the jury, they were then told by the judge, among other things, that "[n]o juror should go to the jury room with a blind determination that the verdict should represent his own opinion," and that "when you find yourselves in a distinct minority, you should, as I have said, question the soundness of your reason for being in the minority." In this setting, it was not surprising that the jury returned to the courtroom shortly with a unanimous verdict of guilty. It would indeed take a strong-willed juror to maintain his position under this type of pressure.

Whatever may be said for the continuing validity [3] of the often criticized *Allen* charge, even in its pristine formulation,[4] unquestionably the supplemental charge given to these two dissenting jurors is impermissible.[5] There is nothing in the *Allen* charge [6] which tells a juror that he should not go "to the jury room with a blind determination that the verdict should represent his own opinion." Nor is there any "legal rule that the majority of jurors have better judgment than the minority." Green v. United States, *supra* Note 1, 309 F.2d at 855. Indeed, a mistrial is as much a part of the jury system as a unanimous verdict.

In view of the possibly coercive effect on the jury of the supplemental charge given in these circumstances, appellant's conviction may not stand.[7]

Reversed and remanded.

WILBUR K. MILLER, Circuit Judge, dissents.

---

3. See Note 1, *supra*.

4. The *Allen* charge approved by the Supreme Court in Allen v. United States, *supra* Note 1, is shown in Commonwealth v. Tuey, 62 Mass. (8 Cush.) 1 (1851). See Allen v. United States, *supra* Note 1, 164 U.S. at 501, 17 S.Ct. 154. That charge "approaches the limits to which the court should go in suggesting to jurors the desirability of agreement and avoidance of the necessity of a retrial before another jury." United States v. Rogers, 4 Cir., 289 F.2d 433, 435 (1961).

5. It seems that the trial court here read to the jury part of the Court's opinion in Allen v. United States, *supra* Note 1, rather than the charge the opinion approved. Compare Stewart v. United States, 8 Cir., 300 F. 769, 785–787 (1924).

6. See Note 4, *supra*.

7. See United States v. Samuel Dunkel & Co., 2 Cir., 173 F.2d 506 (1949), for a case almost on all fours with this one. See also Stewart v. United States, *supra* Note 5, 300 F. at 785, 787.