**James A. SIMMS, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 5363.**

District of Columbia Court of Appeals.

Submitted Feb. 23, 1971.

Decided April 20, 1971.

John Z. Noyes, Washington, D. C., appointed by this court, was on the brief for appellant.

Jerome Wiener, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Charles F. Flynn, Asst. U. S. Attys., were on the brief, for appellee.

Before PAIR, REILLY and YEAGLEY, Associate Judges.

PAIR, Associate Judge:

Appellant was charged with (1) possession of heroin and (2) possession of marijuana, in violation of D.C.Code 1967, § 33–402.

On the ground that the heroin was the product of an improperly executed search warrant, appellant moved to suppress. At the hearing on the motion, there was conflicting testimony respecting police action

in connection with the execution of the search warrant.[1] Detective Ronald Washington, called as a witness for appellant, testified that he and three other officers went to the front door of premises 3219 Stanton Road, S.E. and, after knocking, identifying themselves and announcing the purpose of their presence, the door was opened by a female, later identified as Nancy Hamilton, who admitted them.

Miss Hamilton, called also as a witness by appellant, denied that she opened the door and denied that she heard a knock at either the front door or the back door. She insisted that she heard only a "crash coming from my back door" after which she saw police officers running up the stairs. The motion to suppress was denied.

Trial was by a jury on June 2, 1970 and there was testimony that, upon execution of the search warrant, appellant and one Nancy Hamilton, who was identified as appellant's common-law wife, were found in an upper bedroom. During the search of the bedroom, three capsules of heroin were found in a coffee mug and an additional capsule was found on the floor. In the pocket of a red dress hanging in a closet was found a marijuana cigarette. At the conclusion of the trial, appellant was found guilty of possession of heroin and sentenced to one year imprisonment and a fine of $1,000, in default of the payment of which, to serve an additional term of one year.

On this appeal, three contentions are made in an effort to demonstrate reversible error but finding, after examination of the record, that none of the contentions is meritorious, we affirm the judgment of conviction.

Appellant contends first that the trial court erred in denying him a continuance for the purpose of investigating "apparent contradictions in police testimony."

The request for a continuance, made as it was during the trial, was occasioned by the following circumstance: At the close of the Government's case, appellant renewed his motion to suppress urging again that the police, in executing the search warrant, did not comply with 189 U.S.C. § 3109, in that they entered the dwelling without knocking and announcing their authority. Then followed testimony by Miss Hamilton and appellant that, at the time of the execution of the search warrant, they were in an upper room preparing for bed when they heard a knock and, about a second later, a loud crash. as the police entered through the back door. Received in evidence were photographs which were said, by Miss Hamilton, to represent the back door of the dwelling in a badly damaged condition.

Sergeant Charles J. Nimon, Supervisor of the Vice Unit, Sixth District, was called as a witness for the Government. His testimony was that, in the execution of the search warrant, several officers were stationed at the back door and that he and several other officers, including Ronald Washington, were stationed at the front door. The officers knocked several times, announced their identify and purpose and, after an interval of between 45 and 75 seconds and receiving no response, forced their way through the front door into the dwelling. The best recollection of Sergeant Nimon was that one of the officers then opened the back door and let in the other officers, although "[i]t may have been the front door [b]ut they did not force their way in the back."

It was at this point in the proceedings that counsel for appellant requested a continuance, saying that he was "surprised" by the testimony of Sergeant Nimon because, at the hearing on the motion to suppress, another officer, whose name he could not remember, testified that admission to the

---

1. The reporter's transcript of the pre-trial hearing on the motion to suppress, although not designated by either party as a part of the record on appeal, has been filed with the clerk of this court and, as permitted by our Rule 10(l), we have considered it.

premises was obtained when a female opened the front door.

■ The trial court refused to grant a continuance and very properly so, since Sergeant Nimon had been called as a witness for the Government and there was no contention that he had at any time made statements inconsistent with his testimony. *See* D.C.Code 1967, § 14–102. *Cf.* Brown v. United States, 134 U.S.App.D.C. 1, 411 F.2d 716 (1969); Jones v. United States, 128 U.S.App.D.C. 36, 385 F.2d 296 (1967).

Moreover, as pointed out by the trial judge, there was no basis for a claim of surprise, since, consistent with the testimony of Sergeant Nimon, the testimony of both appellant and Miss Hamilton was that there was a knock on the door, that there was no response to the knock and that the police forced their way into the dwelling. Masiello v. United States, 115 U.S.App.D.C. 57, 58, 317 F.2d 121, 122 (1963). *Cf.* Commonwealth v. Newman, 429 Pa. 441, 240 A.2d 795 (1968). Clearly, therefore, it was not error to deny appellant the requested continuance. Brown v. United States, D.C.App., 244 A.2d 487 (1968); Smith v. United States, D.C.App., 235 A.2d 574 (1967); United States v. Jackson, U.S.App.D.C. (No. 23,430, decided February 18, 1971); Gilmore v. United States, 106 U.S.App.D.C. 344, 273 F.2d 79 (1959); Neufield v. United States, 73 App.D.C. 174, 118

F.2d 375 (1941), cert. denied, Ruben v. United States, 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199 (1942).

Appellant contends next that the trial court's remarks, both before and after delivering the *Allen* charge, were prejudicial.

Sometime after the jury commenced their deliberations, the trial judge advised counsel that he had received a note from the forewoman of the jury which read, "Your Honor, this panel of jurors have deliberated, and have come to the conclusion that we have a hung jury, ten [to] two." Counsel for the Government then requested an *Allen* charge. Counsel for appellant objected on the ground that the charge would unduly pressure the two dissenting jurors into possibly compromising the positions they originally held to go along with the majority. Counsel requested that, instead of giving the charge, the court declare a mistrial. The court declined and gave the *Allen* charge and at its conclusion counsel for appellant, while not indicating approval, made no objection and stated, after inquiry by the court, that he was satisfied as to the form of the charge.

■ Appellant now complains of the form of the charge. While it does appear that the trial court's reading of the *Allen* charge was accompanied by questionable elaborations,[2] there is no showing that the

---

2. It was perhaps unnecessary for us to re-examine the trial court's instructions in the absence of timely objection by appellant's trial counsel to the form of charge. G.S.Crim. Rule 18. We did so, however, in order to ascertain whether plain error had been committed. Such an exercise could have been avoided had the trial judge heeded the admonition of Chief Justice Burger when, as a member of the U. S. Court of Appeals for this circuit, he observed in Fulwood v. United States, 125 U.S.App.D.C. 183, 185, 369 F.2d 960, 963 (1966), cert. denied, 387 U.S. 934, 87 S.Ct. 2058, 18 L.Ed.2d 996 (1967):

While we have considered the slight variations in the *Allen* charge and found them nonprejudicial and noncoercive, we note that considerable work

for this court would be eliminated if District Judges would consistently use a form of instruction plainly within *Allen*.[5]

5. The bar performed a very useful service in summarizing and stating succinctly and accurately what the Supreme Court permits by a way of a supplemental charge when a jury impasse arises. See JUNIOR BAR SECTION OF D.C. BAR ASS'N, CRIMINAL JURY INSTRUCTIONS § 41 (1966).

The text of Section 41 referred to by Judge Burger in the foregoing footnote 5 is as follows:

In a large proportion of cases absolute certainty cannot be expected. Although the verdict must be the verdict of each individual juror, and not a

court was informed whether the majority favored conviction or acquittal and, in urging the jury to agree, no indication was given as to which verdict was favored.[3] We are, therefore, unable to conclude, after an examination of the instructions in their entirety, that they were coercive or contained language which would constitute plain error. Cobb v. United States, D.C. App., 246 A.2d 777 (1968), Palmer v. United States, D.C.Mun.App., 161 A.2d 142 (1960); United States v. Washington, U.S. App.D.C. (No. 23,059, decided December 28, 1970); McAllister v. United States, 99 U.S. App.D.C. 256, 239 F.2d 76 (1956).

■ Appellant's final contention is that the sentence imposed upon him was illegal: specifically, that it exceeded the maximum sentence permitted by D.C.Code 1967, § 33–402.

The sentence imposed upon appellant was one year imprisonment and a fine of $1,000, in default of the payment of which, an additional one year imprisonment. Such sentences have been upheld by this court. *See* Henderson v. United States, D.C.App., 189 A.2d 132 (1963); Hankins v. United States, D.C.Mun.App., 120 A.2d 590 (1956).

Appellant, however, relies upon this court's decisions in Lucas v. United States, D.C.App., 268 A.2d 524 (1970), and Sawyer v. District of Columbia, D.C.App., 238 A.2d 314 (1968). In those cases the person sentenced to alternate imprisonment in default of payment of the fine was an indigent and, in *Sawyer,* we said:

> * * * [I]n every case in which the defendant is indigent, a sentence of imprisonment in default of payment of a fine which exceeds the maximum term of imprisonment which could be imposed under the substantive statute as an original sentence is an invalid exercise of the court's discretion for the reason that its only conceivable purpose is to impose a longer term of punishment than is permitted by law. * * * [*Id.* at 318.]

See also Tate v. Short, 401 U.S. 395, 91 S. Ct. 668, 28 L.Ed.2d 130 (1971), and Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), which hold that it is a denial of equal protection to limit punishment to payment of a fine for those who are able to pay, but to convert the fine to imprisonment for those who are unable to pay.

Here, although there is no clear showing that appellant is an indigent, he has been permitted to proceed in forma pauperis. Under the circumstances, we

Remand with direction to determine whether appellant is an indigent and, if so, to vacate so much of the judgment as provides for imprisonment in default of the payment of the fine. In all other respects, the judgment of conviction is affirmed.

---

mere acquiescence in the conclusion of your fellows, yet you should examine the questions submitted with candor and with proper regard and deference to the opinions of each other. It is your duty to decide the case if you can conscientiously do so. You should listen to each other's arguments with a disposition to be convinced. If much the larger number of jurors are for conviction, a dissenting juror should consider whether his doubt is a reasonable one which makes no impression upon the minds of so many jurors, equally honest, equally intelligent with himself. If, upon the other hand, the majority are for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which is not concurred in by the majority.

3. We concur in the observations of the court in Mullin v. United States, 123 U.S.App.D.C. 29, 31, 356 F.2d 368, 370 (1966):

While it is probably rare for jurors to reveal the standing of their vote to anyone before verdict or deadlock is found we commend to the District Court a fixed practice of admonishing every jury at the time it retires that it must not reveal the standing of its vote at any time to anyone, including the Trial Judge, but to report only a verdict or inability to reach one.