**Tommie A. JOHNSON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 9713.

District of Columbia Court of Appeals.

Argued March 18, 1976.

Decided July 14, 1976.

---

Frederick H. Weisberg, Washington, D. C., appointed by this court, for appellant. W. Anthony Fitch, Washington, D. C., also entered an appearance for appellant.

Regina C. McGranery, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Joseph B. Valder, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, GALLAGHER and HARRIS, Associate Judges.

KELLY, Associate Judge:

Tommie A. Johnson, convicted by a jury of committing two armed robberies,[1] urges on appeal that the trial judge coerced the verdicts by, among other things, allowing the jury to continue deliberating notwithstanding a second announcement that a verdict could not be reached on the robbery charges. He argues also that the judge erred in denying the jury foreman's request to approach the bench immediately before the rendition of the final verdict and that he committed plain error when he referred in a portion of his final charge to armed robbery as requiring proof of general intent rather than specific intent. We affirm.

In the late evening of June 16, 1974, two robberies were committed in Northwest Washington by a person clad in a woman's yellow pantsuit and carrying a brown shoulder bag. In each instance, the victim was a motorist who had been solicited for a ride by this individual and robbed a short time later. The first victim surrendered his cash after being threatened with a letter opener. The second victim was as-saulted with a starter pistol and, after a brief struggle, lost his wallet to the assailant. Shortly after the second robbery, the victim of that offense encountered appellant on the street and identified him as the robber.[2] The police who were summoned arrested the appellant and took him to a nearby police station. Coincidentally, the victim of the first robbery was inside the station reporting that offense at the time of appellant's arrival. Upon noticing appellant, he immediately identified him as the perpetrator of the offense of which he was making complaint.

The jury began deliberating in the early afternoon of the third day of trial. About two hours later a deadlock was announced. The judge determined that a deadlock instruction should be given at that time despite the suggestion of both counsel that he delay this action until the jury had been given an opportunity to deliberate further.[3] The jury was then returned to the courtroom and given the *Winters*[4] instruction. The judge prefaced the charge with the following remarks:

> Ladies and Gentlemen of the Jury, I received a note from the Foreman saying that you were hopelessly deadlocked, which is premature. Some 200 years ago there was a Navy man who was hanged for his remarks: "We are not just begun to fight." That means the carrying out of his duty and responsibility. This case was given to you approximately a little over an hour. . . .

Following a full morning of deliberation the next day the jury returned guilty verdicts on the lesser included offenses of assault with a deadly weapon and possession of a prohibited weapon. A deadlock was

---

1. D.C.Code 1973, §§ 22-2901, -3202.

2. At this time, appellant was attired in a brown miniskirt and wore a different style wig than that worn by the robber.

3. Counsel reasoned that the jury had not been deliberating long enough to warrant the conclusion that they were genuinely dead-locked. The judge agreed that the deadlock announcement was premature, but rejected the suggestion that he delay giving the instruction after counsel failed to specify any prejudice which would result from giving it immediately.

4. *Winters v. United States*, D.C.App., 317 A.2d 530 (1974) (en banc).

reported with respect to the counts of armed robbery, robbery and larceny. At this time, both government and defense counsel agreed that the jury should be allowed to deliberate further after a luncheon recess. On returning from the recess, however, defense counsel moved for a mistrial on the remaining counts, expressing the concern that to require further deliberation would have a coercive effect on the jury. The motion was denied and less than one hour later the jury reported verdicts of guilty on both counts of armed robbery.

Appellant Johnson contends that the circumstances surrounding the giving of the *Winters* charge contributed to an atmosphere of coercion which invaded the province of the jury.[5] Specifically, he urges that by expressing his view that the deadlock was premature and adding the gratuitous and inappropriate comment about the Navy man, the trial judge intimated that the jury was required to reach a verdict.

■ As appellant candidly recognizes, the coercive effect of the court's statements must be evaluated in context and with regard to all the circumstances of the case. *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965). Applying this test in the instant case, we are not convinced that the trial judge's remarks exerted undue pressure on the jury. Indeed, the lack of any significant coercive effect is apparent from the fact that the deadlock on the armed robbery counts persisted following the delivery of the *Winters* charge, for the remarks did not deter the jury from concluding

once again the next day that it was unable to reach a verdict on these counts.

With respect to the asserted error in allowing continued deliberations in the face of a second deadlock announcement, this contention was rejected in *Thompson v. United States*, D.C.App., 354 A.2d 848 (1976), in a factual context remarkably similar to this case. There too, after having been read the *Winters* instruction, the jury reported a second deadlock. The *Thompson* court cautioned that once the *Winters* instruction was given and a second deadlock was announced after a "reasonable period," it may be coercive to require further deliberations. *Id.* at 850. But noting, *inter alia,* that the jury was "given to rather short deliberation spans before reporting an inability to reach a verdict," the court concluded that under the circumstances the trial judge acted properly. *Ibid.*

■ Here, the jury was given the *Winters* instruction at the close of the first day of deliberations and following the next morning of deliberations concluded again that a verdict could not be reached on the armed robbery counts. In announcing that the jury would be required to deliberate further after lunch the trial judge merely stated: "I would like you to resume your deliberation on the other six counts." On these facts, considering the totality of the circumstances we do not view his ordering of continued deliberation at this point as coercive.[6]

Immediately after the announcement of the jury's guilty verdict on one of the arm-

---

5. We need not decide whether the trial judge erred in giving the charge when he did since the timing of the instruction was not challenged on appeal. We nevertheless reiterate that, "[T]he *Winters* instruction . . . is not a course to be taken precipitously and automatically when a jury announces an inability to reach a verdict. . . . The . . . instruction . . . should be in the nature of an ultimate judicial attempt, not a preliminary attempt, to secure a verdict." *Thompson v. United States*, D.C.App., 354 A.2d 848, 851 n. 8 (1976).

6. The presence on the panel of a juror who became distraught during deliberations due to a personal matter unrelated to the trial was not considered in deciding this issue. It appears from the record that the trial judge and counsel for both sides were satisfied that this juror could render a fair and impartial decision in spite of obvious emotional distress. Further, defense counsel rejected the suggestion that a verdict of eleven jurors be accepted.

ed robbery charges, the following exchange occurred:

THE DEPUTY CLERK: Mr. Foreman, have you and the members of the jury reached a unanimous verdict with respect to count five of the indictment, which charges armed robbery?

THE FOREMAN: Your honor, may I appı oach the bench?

THE COURT: No, I don't think you can.

THE FOREMAN: Guilty. We have.

The jury was polled shortly thereafter and each juror answered "guilty" on each count.

■■ Appellant contends that the foreman's request manifested jury doubt or confusion and that the judge erred in failing to take remedial action. Wo do not view the inference of jury confusion justified, however, in part since the failure of defense counsel to object at this point indicates that he did not perceive evidence of such a problem. The primary device for uncovering the doubt or confusion of individual jurors is, of course, the jury poll. *Kendall v. United States*, D.C.App., 349 A.2d 464 (1975). But here, the jury poll yielded unanimous verdicts; so, considering the facts of this case, it is unlikely that any juror was so intimidated as to deliberately mask his or her confusion during the poll.

Finally, appellant argues that a misstatement by the trial judge regarding the intent element of armed robbery constituted plain error.[7] The error was made at the close of the final charge during the following colloquy:

THE COURT: . . . With respect to the two counts involving petty larceny, the requirement is only a general intent. . . . With respect to the armed robbery, assault with a dangerous weapon, and petty larceny, the requirement is for specific intent. I correct myself on that.

[THE PROSECUTOR]: Your Honor, ADW is the general intent.

THE COURT: With the help of the Assistant U.S. Attorney, the armed robbery, robbery, petty larceny, prohibited weapon, assault with a dangerous weapon is general intent.[8]

■ Appellant concedes that before this exchange the jury was instructed properly on all the elements of armed robbery, including specific intent. Indeed, the jury was told six times that specific intent was a necessary element of robbery or armed robbery, and the trial judge defined specific intent, explaining the difference between specific and general intent in the language of the standardized jury instruction, Criminal Jury Instructions for the District of Columbia, 2d. Ed., D.C.Bar Ass'n (1972) Instruction 3.01. The timing of the misstatement and the fact that it was not corrected undoubtedly enhanced its potential for confusing the jury, but viewing the charge as a whole, we conclude that the error was not of such magnitude that a fair deliberation on all the elements of armed robbery was precluded. *See Darden v. United States*, D.C.App., 342 A.2d 24 (1975).

*Affirmed.*

---

7. Since appellant's trial counsel failed to object to this portion of the charge, any resulting prejudice must be found to have affected appellant's substantial rights in order to justify reversal. *See* Super.Ct.Cr.R. 52(b) and 30.

8. Armed robbery requires proof of "a specific intent to take the property of another." *Richardson v. United States*, 131 U.S.App. D.C. 168, 169, 403 F.2d 574, 575 (1968).