Gregory R. CROWDER, Appellant,

v.

UNITED STATES, Appellee.

No. 10039.

District of Columbia Court of Appeals.

Argued Dec. 14, 1977.

Decided Feb. 17, 1978.

Marsha E. Swiss, Washington, D. C., appointed by this court, for appellant.

Ann P. Gailis, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Peter E. George, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN and MACK, Associate Judges, and PAIR, Associate Judge, Retired.

KERN, Associate Judge:

After a jury trial, appellant was found guilty of second-degree burglary, D.C.Code 1973, § 22–1801(b), and grand larceny, D.C. Code 1973, § 22–2201. On appeal, appellant contends that two rulings of the trial court were erroneous: (1) the trial court's denial of his motion to dismiss the indictment on speedy trial grounds, and (2) the trial court's refusal to declare a mistrial, on appellant's motion, when the twelfth juror

polled dissented from the verdict of "guilty" to the charge of grand larceny. Our review of the record persuades us that appellant's Sixth Amendment rights were not infringed; however, we conclude that, on the particular facts of this case, the trial court's refusal to declare a mistrial constituted an abuse of its discretion which warrants reversal of appellant's conviction for grand larceny.

Evidence introduced by the government indicates that on the morning of April 10, 1974, Calvin LeCompte left his apartment at 305 T Street, N.W., between nine and ten o'clock. LeCompte, a teacher, gave music lessons in his basement studio which was outfitted with an expensive array of audio equipment. When LeCompte left, he securely locked the apartment doors. Shortly before noon, James Edmundson, age 14, was walking along T Street near LeCompte's apartment when he saw appellant standing on LeCompte's porch. Appellant called out to Edmundson, and, as Edmundson approached, asked him if he "[wanted] to get a hustle." Edmundson knew appellant did not reside at 305 T Street and that he was proposing they enter the apartment and steal from the occupant.[1] Edmundson saw that the apartment door was already open and that some of LeCompte's property had been moved about inside.[2] Edmundson then followed appellant to the basement studio and was preparing to remove a typewriter when they were apprehended by the police.[3] As a policeman attempted to handcuff appellant, he broke free and managed to escape by jumping over a fence, the handcuffs dangling from one wrist. While in custody at the police station following his arrest, Edmundson named appellant as the person who had been with him in LeCompte's apartment. At trial, Edmundson admitted his participation in the burglary and recounted his post arrest comments which implicated appellant. One of the arresting officers also identified appellant at trial as the youth who escaped after his apprehension in LeCompte's basement.[4]

Following the denial of his motion for a judgment of acquittal, appellant testified that on the day of the crime he was working in a pool hall less than four blocks from LeCompte's apartment. Appellant denied participating in the burglary, taking any of LeCompte's property, or being apprehended by the police. During cross-examination, appellant testified to the effect that he (1) visited LeCompte's apartment on other occasions, (2) knew LeCompte owned valuable audio equipment, and (3) was acquainted with James Edmundson.

When the jury returned to the courtroom to deliver its verdict, the foreman announced that unanimous verdicts of guilty had been reached on the second-degree burglary and grand larceny counts. During a poll of the jury on the grand larceny count, the twelfth juror's response indicated a non-unanimous verdict. The trial court immediately instructed the jury to resume its deliberations on the grand larceny count.[5] The jury then retired and, forty minutes later, returned with a unanimous verdict of guilty. The jury was then polled without incident.

## RIGHT TO A SPEEDY TRIAL

As appellant states, a speedy trial claim based upon a delay of more than one

---

1. LeCompte testified that appellant lived one block away from 305 T Street and that appellant had visited him in his apartment on a few occasions.

2. The homeowner and a policeman both testified that the apartment had been ransacked and that some of the more valuable personal property had been moved about. A television set and a pair of loudspeakers had been removed from the apartment and placed in a common hallway. A small pocket calculator was also missing and was never recovered.

3. At trial, police testimony corroborated Edmundson's version of the circumstances surrounding their apprehension in LeCompte's basement and appellant's subsequent flight.

4. The policeman testified that his identification was based on a "good look" at appellant taken at the time of his capture.

5. Following the court's instruction but prior to the jury's departure to resume its deliberations, a motion for a mistrial was made and denied.

year has prima facie merit. *United States v. Perkins*, D.C.App., 374 A.2d 882, 884 (1977); *Branch v. United States*, D.C.App., 372 A.2d 998, 1000 (1977). A heavy burden then shifts to the government to justify the delay. Here, 51 weeks elapsed from the time appellant was taken into custody until the initiation of his trial; [6] consequently, no prima facie merit attaches to his claim of a denial of his right to a speedy trial and he bears the burden of demonstrating that prejudice accrued due to the delay.[7] As *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) indicates, the length of the delay is to some extent a triggering mechanism. Until there is delay sufficient to be at least presumptively prejudicial or unless actual prejudice is shown, it is unnecessary to consider the other factors outlined in *Barker v. Wingo, supra* at 530, 92 S.Ct. 2182, as the linchpins of a speedy trial analysis. *United States v. Bolden*, D.C.App., 381 A.2d 624 (1977).

Appellant claims the delay in this case resulted in the loss of his alibi witness, Milton Smith, the operator of the pool hall in which appellant contends he was working at the time the offense occurred. Appellant further asserts that due to the delay, the charges against James Edmundson were disposed of, and, as a result, Edmundson lost his privilege against self incrimination and thus became available as a witness to strengthen the government's case.

■ Appellant's contention that his defense was impaired because the delay permitted the government to obtain Edmundson's testimony is not meritorious. There is no indication that the prosecution made any attempt to delay appellant's trial or to expedite the juvenile court proceedings against Edmundson. Moreover, we note that the bulk of the delay complained of in *Barker v. Wingo, supra* 407 U.S. at 516, 92 S.Ct. 2182, was generated by government attempts to first obtain a conviction of Barker's companion in crime. This procedure was motivated by the prosecution's belief that "Barker could not be convicted unless . . . [his companion] testified against him." *Barker v. Wingo, supra* at 516, 92 S.Ct. at 2185. This prosecutorial strategy was not outlawed by the Supreme Court:

> Perhaps *some delay* would have been permissible under ordinary circumstances, so that . . . [Barker's companion] could be utilized as a witness [at Barker's trial]. *Barker v. Wingo, supra* at 534, 92 S.Ct. at 2194, emphasis added.]

Moreover, any claim of "prejudice" must be assessed in light of the interests of defendants which the speedy trial right was designed to protect; *viz.,* impairment of the accused's defense due to the death, disappearance, or loss of memory of *defense* witnesses. *Barker v. Wingo supra* at 532, 92 S.Ct. 2182. In this case, the delay, at least as far as Edmundson was concerned, did not impair appellant's defense. Edmundson was not a defense witness who died, disappeared or became unable to recall accurately events of the distant past. Here, the delay resulted in no impairment of appel-

---

6. Our computation of the delay for speedy trial purposes begins on May 22, 1974, the day appellant was rearrested in accordance with a warrant issued one week earlier. Although the offense occurred on April 10, 1974, appellant is in no position to complain regarding any reasonable delay directly attributable to his unlawful flight. *See United States v. Bey*, 499 F.2d 194, 203 (3rd Cir.), *cert. denied*, 419 U.S. 1003, 95 S.Ct. 322, 42 L.Ed.2d 278 (1974); *United States v. Judge*, 425 F.Supp. 499, 502 (D.Mass. 1976), *citing United States v. Cartano*, 420 F.2d 362, 364 (1st Cir.), *cert. denied*, 397 U.S. 1054, 90 S.Ct. 1398, 25 L.Ed.2d 671 (1970). In his concurring opinion in *Dickey v. Florida*, 398 U.S. 30, 48, 90 S.Ct. 1564, 1574, 26 L.Ed.2d 26 (1970), Mr. Justice Brennan stated:

> A defendant may be disentitled to the speedy-trial safeguard in the case of a delay for which he has, or shares, responsibility. It has been held, for example, that an accused can not sustain a speedy-trial claim when the delay results from his being a fugitive from justice.

7. Our conclusion that appellant has failed to demonstrate that any cognizable prejudice arose due to the 11 month delay obviates the necessity to consider the other three factors announced in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), as the determinants of a speedy trial analysis.

lant's defense; instead, the prosecution's case was strengthened. *See Barker v. Wingo, supra* at 532, 92 S.Ct. 2182.

■ Appellant's other claim of prejudice concerns the purported loss of his alibi witness, Milton Smith, the operator of the pool hall where appellant testified he was employed at the time of the offense. Although impairment of an accused's defense is to be considered the most serious form of prejudice in a speedy trial analysis, *Barker v. Wingo, supra* at 532, 92 S.Ct. 2182, the record indicates that appellant's inability to secure the attendance of his alibi witness was caused not by the length of the delay, but by his counsel's refusal to invoke court processes to insure Smith's presence at trial.[8]

Appellant's case was scheduled for trial on six separate occasions between December 1974 and May 1975. The record clearly indicates that the alibi witness was never present during the trial of this offense in May 1975. The record also shows that the alibi witness was absent on *at least* three of the other five scheduled trial dates.[9] Although appellant's counsel was aware that securing the alibi witness' presence at trial could prove difficult, he never sought a continuance nor attempted to invoke court processes to insure Smith's presence. Moreover, when the trial judge issued sua sponte a bench warrant for the alibi witness, it was quashed at the request of appellant's counsel. On these facts, appellant has failed to demonstrate that the delays in this case necessarily resulted in the impairment of his defense. The record suggests that defense counsel elected, as a tactical matter, not to take advantage of available court processes to secure the attendance of the alibi witness. Having lost his gamble

that his only alibi witness could be induced to appear at trial without compulsion, appellant cannot now characterize the results of this decision as "prejudice" which warrants the reversal of his convictions on speedy trial grounds.[10]

## THE JURY POLL

■ Super.Ct.Cr.R. 31(d) provides:

When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

The jury poll is the primary device for uncovering the doubt or confusion of individual jurors. *Johnson v. United States*, D.C.App., 360 A.2d 502, 505 (1976); *Williams v. United States*, 136 U.S.App.D.C. 158, 164, 419 F.2d 740, 746 (1969) (en banc). Its purpose is to determine with certainty that every juror approves of the verdict as returned, and that no juror has been coerced or induced to agree to a verdict with which he dissents. *Solar v. United States*, D.C.Mun.App., 86 A.2d 538, 540 (1952), *quoting Humphries v. District of Columbia*, 174 U.S. 190, 194, 19 S.Ct. 637, 43 L.Ed. 944 (1899), 2 Wright, Fed.Prac. and Proc., *Criminal*, § 517. Thus, the jury poll has long been regarded as a useful and necessary device for preserving the defendant's right to a unanimous verdict. *United States v. Brooks*, 137 U.S.App.D.C. 147, 151, 420 F.2d 1350, 1354 (1969). If the poll reveals that the jury is not unanimous, the rule permits the trial court to either direct the jury to retire for further deliberations or to discharge the jury. *Kendall v. United*

---

**8.** Defense counsel contended his refusal to employ court processes to insure the presence of the alibi witness was motivated by a fear of the consequences of "arresting" Milton Smith. However, at trial, with defense counsel's approval, a bench warrant was ultimately issued for Smith's arrest.

**9.** The record does not expressly indicate whether the alibi witness was present on the first and fourth scheduled trial dates, although

defense counsel announced that he was ready to proceed on both occasions.

**10.** *Significantly, when defense counsel argued the speedy trial motion below, the only prejudice claimed to have been generated by the delay was the availability of James Edmundson's testimony. No prejudice was claimed due to the absence of the alibi witness, who was described by the trial judge as "hiding out" until the trial was concluded.*

*States,* D.C.App., 349 A.2d 464, 467 (1975); *Jones v. United States,* D.C.App., 273 A.2d 842, 844 (1971); *In re Pearson,* D.C.App., 262 A.2d 337, 339 (1970); *Matthews v. United States,* D.C.App., 252 A.2d 505, 506 (1969); *Solar v. United States, supra* at 540, *quoting Bruce v. Chestnut Farms-Chevy Chase Dairy,* 75 U.S.App.D.C. 192, 193, 126 F.2d 224, 225 (1942).

At issue here is the proper procedure for a trial judge to follow once the poll indicates that the twelfth juror disagrees with the announced verdict. Because Rule 31(d) vests the trial court with a measure of discretion—". . . the jury *may* be directed to retire for further deliberations or *may* be discharged" (emphasis added)—appellate review of this basically *ad hoc* decision requires a careful examination of the factual context in which the decision was made. During the poll of the jury, the following exchange occurred:

CLERK: I'm having difficulty with finding the twelfth juror—[name], with respect to count 1.

TWELFTH JUROR: Guilty.

CLERK: With Respect to Count 2?

TWELFTH JUROR: Not Guilty.

DEFENSE COUNSEL: Your Honor, I believe the juror said not guilty to Count 2. Could we have the court reporter read back what the juror said to Count 2?

PROSECUTOR: I would ask by way of clarification that the counts be stated, whether we are talking about grand Larceny, destruction of property, or whatever.

COURT: To Juror Number 12, read what Count 1 and Count 2 is again.

CLERK: With respect to Count 1 which charges second degree burglary, how do you find the defendant?

TWELFTH JUROR: Guilty.

CLERK: With respect to Count 2 which charges grand Larceny, how do you find the defendant?

TWELFTH JUROR: I said not guilty, because the evidence was—

DEFENSE COUNSEL: I didn't understand.

COURT: I didn't understand what she said.

DEFENSE COUNSEL: I understand that she said not guilty, your Honor.

PROSECUTOR: I didn't understand the last sentence.

TWELFTH: I said not guilty on Count 2 because of the lack of evidence. I couldn't understand. (*Sic.*)

In accordance with Instruction 2.93 of the Criminal Jury Instructions for the District of Columbia, the trial court advised the jury:

Members of the jury, in the polling, one of your members has made an answer which indicates that you have not reached a unanimous verdict with respect to Count 2. For this reason I am asking you to return to the jury room for further consideration of your verdict, and when you have reached a unanimous verdict, you may return to the court. If it's not unanimous, then you continue your deliberations.

After you return to the jury room, any member is free to change his or her vote on any issue submitted to you. Each juror is free to change his or her vote until the jury is discharged. So you may return to the jury room.

A motion for a mistrial was made by defense counsel and denied. Forty minutes later, the jury returned with a verdict of guilty on the grand larceny count. The jury was then polled without incident.

■ Appellate evaluation of the procedure selected by a trial court pursuant to Rule 31(d) is guided by the abuse of discretion standard. As noted in *United States v. Brooks, supra* 137 U.S.App.D.C. at 150, 420 F.2d at 1353:

[Rule 31(d)] invests the trial judge with a measure of discretion in assessing the impact of a dissenting vote during a jury poll, and the reasonable exercise of this discretion should be accorded proper deference by a reviewing court . . . [citation omitted] the trial judge is in a much better position than an appellate tribunal to determine whether a recalcitrant juror's eventual acquiescence in a verdict was in fact freely given.

*See Williams v. United States,* 136 U.S.App. D.C. 158, 164, 419 F.2d 740, 746 (1969).

Appellant argues that the trial court erred by requiring further deliberations after the poll revealed both the precise numerical division of the jury, *viz.,* eleven to one, and the identity of the dissenting juror. *On the facts of this case, we agree.*

■ Every jury poll has an inescapable element of coercion. *Kendall v. United States, supra* at 466. Moreover, when a lack of unanimity is revealed in open court during the poll by the *last juror* registering a dissent, the potentially coercive impact of requiring the jury to retire for further deliberations is heightened since the numerical split of the jury and the identity of the only dissenter have been revealed in open court. In such a situation, the trial judge should be especially sensitive to the possibility of undue coercion of the lone dissenter.[11]

■ The facts of the instant case support our conclusion that the trial court abused its discretion by denying appellant's motion for a mistrial after the poll revealed the twelfth juror's unequivocal dissent from the verdict of guilty. This is not a situation like *Williams v. United States, supra* at 164, 419 F.2d at 746, where one juror was plainly confused in her answers although there had been unanimity in fact. In *Williams,* the federal circuit court expressly based its holding on the assumption that "there had been unanimity in fact, and the return to the jury room served merely to obtain clarity in the expression of the previous fact of unanimity." *Williams v. United States, supra* at 164 n. 8, 419 F.2d at 746 n. 8.[12] In this case, we are unable to say upon review of the transcript that the twelfth juror was confused; instead, she twice replied "not guilty" when polled on the grand larceny count. When polled a third time she responded: "I said not guilty on Count 2 because of the lack of evidence. I couldn't understand (*sic*)."[13] Moreover, the twelfth

---

**11.** In exercising the discretion vested in him by Rule 31(d), the trial court must endeavor to insure that the jury freely and fairly arrives at a unanimous verdict. Although the trial court properly recited Instruction 2.93 to the jury, once the dissent was registered, the facts of this case might have justified a further attempt to dissipate the potential coerciveness inherent whenever the twelfth juror's dissent is revealed in open court and the jury is instructed to continue its deliberations. The most obvious danger in such a situation is that the lone recalcitrant juror will conclude that the trial judge is requiring further deliberations in order to eliminate his dissent. To allay any such fears, a trial judge might consider the propriety of supplementing Instruction 2.93 with a comment to the effect:

> It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict. [Instruction 2.91 (Alternative A).]

Whether such a supplemental instruction could have sufficiently reduced the likelihood of un-

due coercion and thereby validated the trial court's decision to return the jury for further deliberations can only be decided on the particular facts of each case. Since no supplemental instruction was given in the instant case, we decline to speculate whether it might have justified the court's exercise of its discretion in favor of requiring the jury to deliberate further once the twelfth juror dissented from the verdict.

**12.** Although appellant's trial lasted approximately four hours, the jury deliberated more than two hours before initially returning with its verdict. Upon being directed to resume its deliberations following the poll, the jury deliberated another forty minutes before returning with a verdict of guilty on the grand larceny count. The fact that the jury did not return more promptly following the court's instruction to resume its deliberations weakens the government's contention that the dissenting juror was merely confused, rather than in disagreement with the verdict as announced.

**13.** In *Williams v. United States, supra* at 164 n. 8, 419 F.2d at 746 n. 8, the federal circuit court here stated:

> We need not concern ourselves now with the case in which the announcements of the jurors make it clear that one juror differs with the others, and the return to the jury room is for the purpose of obtaining unanimity that plainly did not exist when they first came in to announce their verdict. *That kind of fur-*

juror registered her dissent after hearing eleven other jurors declare that appellant was guilty of grand larceny thus making it highly unlikely that her vote of "not guilty" was the result of confusion.

In short, our conclusion that the trial court abused its discretion by not discharging the jury when the poll revealed the twelfth juror's dissent is based upon: (1) the inevitable increase in potential coerciveness which occurs when both the numerical division of the jury and the identity of the lone dissenter are revealed in open court,[14] and (2) the degree of assurance with which the single juror dissented. For these reasons, appellant's conviction for second-degree burglary is affirmed and appellant's conviction for grand larceny is reversed and remanded.

*So ordered.*

*ther deliberation is also apparently contemplated by Rule 31(d), but there may well be a problem with coerciveness under the particular facts of the case.* [Emphasis added.] We agree that Rule 31(d) permits the trial judge to either discharge the jury or return it for further deliberations even when the dissenting juror's response indicates that no unanimity in fact existed in the jury room. However, this discretion will be found to have been abused where, upon consideration of all the circumstances surrounding its exercise, its impact is to coerce a dissenting juror.

14. A return for further deliberations would have less potential for coercion of juror number three, for example, if this juror had during the poll announced "not guilty" since: (1) the precise numerical division of the jury would not necessarily be revealed; (2) this juror would not necessarily be the *only* dissenter; and, (3) due to the termination of the poll for further deliberations, nine jurors would not have expressed their opinion concerning the accused's guilt or innocence *in open court* and, hence, might have been more sympathetic in their evaluation of a dissenter's complaint than would be the case if they had already given a contrary opinion in open court, when polled.