Charles G. SMITH, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 86–1373.

District of Columbia Court of Appeals.

Argued Dec. 16, 1987.
Decided May 23, 1988.

Nancy Ferrazza, Washington, D.C., appointed by this court, for appellant.

Patricia A. Riley, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty. at the time the brief was filed, and Michael W. Farrell, Charles W. Cobb, and Mary Ellen Abrecht, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK, TERRY, and STEADMAN, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted of distributing heroin, in violation of D.C.Code § 33–541(a)(1) (1987 Supp.). During its deliberations the jury sent the trial court two notes that revealed the number of jurors who favored conviction. After receiving the second of these notes, which disclosed that eleven jurors were in favor of conviction and one was in favor of acquittal, the trial court gave a *Winters* anti-deadlock instruction.[1] Appellant contends that under these circumstances the *Winters* instruction was coercive. We agree and reverse.

---

1. Criminal Jury Instructions for the District of Columbia, No. 2.91(B) (3d ed. 1978); *see Winters v. United States*, 317 A.2d 530 (D.C.1974) (en banc).

## I

The government's evidence showed that appellant sold a $40 packet of heroin to an undercover police officer. Appellant's defense was that at the time of the sale he was helping his brother and his brother's girl friend move to a new apartment, and that the officer had misidentified him.

After it had begun to deliberate, the jury sent the trial judge a note which said:

[T]he jury has not been able to come to a unanimous decision owing to some very fundamental differences and interpretations. We're unable to render a verdict in this case. The vote is nine guilty, three not guilty.

The judge's law clerk intercepted the note and, following the judge's instructions, read aloud to the judge and both counsel only the first two sentences. Neither the judge, the prosecutor, nor defense counsel knew that the note revealed the jury's numerical division.[2]

Some time later the jury sent the judge another note which said:

[W]e are still unable to render a unanimous decision in this case. The vote is eleven guilty and one not guilty.

Again the judge's law clerk intercepted the note, and this time—presumably at the judge's instructions, although the record does not so indicate—he simply told the judge that the jury was still deadlocked. The judge in turn reported this deadlock to both counsel.[3] The jury was then brought back into the courtroom, and the judge gave a *Winters* instruction over the objection of defense counsel. About twenty minutes later the jury returned a verdict of guilty.

## II

Coercion of a jury verdict does not mean simple pressure to agree; such pressure is a natural function of sending twelve persons into a jury room to deliberate. That pressure becomes coercive, however, when it goes so far as "to force a juror to abandon his [or her] honest conviction...." *Winters v. United States, supra* note 1, 317 A.2d at 532. A verdict resulting from such coercion cannot stand.

Trial judges properly instruct juries never to reveal their numerical division when communicating with the court during deliberations. We agree with the court in *Mullin v. United States*, 123 U.S.App.D.C. 29, 31, 356 F.2d 368, 370 (1966), that such an instruction should be "a fixed practice" with every trial judge.[4] There is inevitably a risk of coercion whenever a jury is divided unevenly. Any effort by the court to persuade the jury to reach an agreement after reporting its numerical split, such as giving a *Winters* instruction, may be interpreted by the minority as an implied command to agree with the majority. *United States v. Sae–Chua*, 725 F.2d 530, 531–532 (9th Cir.1984); *see Mullin v. United States, supra*, 123 U.S.App.D.C. at 31, 356 F.2d at 370. Despite these dangers, a revelation of numerical division which does not indicate whether the majority favors conviction or acquittal has usually been held not to require reversal. *Simms v. United States*, 276 A.2d 434, 436–437 (D.C.1971); *United States v. Diggs*, 173 U.S.App.D.C. 95, 105–106, 522 F.2d 1310, 1320–1321 (1975), *cert. denied*, 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976); *Williams v. Parke*, 741 F.2d 847, 851 (6th Cir.1984), *cert. denied*, 470 U.S. 1029, 105 S.Ct. 1399, 84 L.Ed.2d 787 (1985). Where the majority's inclination is not revealed, courts have generally concluded that there is no prejudice in pressing the minority toward acceptance of the majority view, since the pressure could well be toward an acquittal. The problem in this case, however, is that the jury sent not one but two notes to the

---

**2.** This was in fact the second note from the jury. The first had asked two questions about the evidence, and the judge had replied that the jury should rely on its recollection of the testimony.

**3.** The judge said:

I haven't read the note and I will not let counsel read it, but the impression that I get from my clerk is that they are deadlocked. So it will be put in the record, and you'll be able to see it in due course.

**4.** Appropriate language may be found in the second paragraph of Criminal Jury Instructions for the District of Columbia, No. 2.72 (3d ed. 1978).

judge explicitly stating that a substantial majority of the jurors favored a guilty verdict; consequently, we cannot look for guidance to such cases as *Simms* and *Diggs*. Instead, we follow the general rule that when a *Winters* instruction is challenged, we examine the surrounding circumstances to decide whether the instruction was coercive. *Coleman v. United States*, 515 A.2d 439, 453 (D.C.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1631, 95 L.Ed.2d 205 (1987); *Wilson v. United States*, 419 A.2d 353, 356 (D.C.1980).

■ In our legal system, the minority in a jury deserves respect and credence. Indeed, "[i]t is contrary to the concept of a free society that one who is outnumbered is wrong for that reason alone. No judge should instill that notion in a juror's mind." *Winters, supra* note 1, 317 A.2d at 535 (Gallagher, J., concurring); *see Williams v. United States*, 119 U.S.App.D.C. 190, 193, 338 F.2d 530, 533 (1964). Thus a *Winters* instruction should not be given routinely, but only after careful consideration by the trial judge of the nature of the case and the length of the deliberations. *Wilson, supra*, 419 A.2d at 356. The judge must take special care not to put undue pressure on the minority jurors.

■ When a jury reveals its numerical division and the judge then gives a *Winters* instruction, the potential for coercion is great. *See Blango v. United States*, 335 A.2d 230, 233 (D.C.1975) (citing cases). It is as if the judge were to say, "I know a few of you are holding up a verdict; you should stop being so stubborn and fall in line." In this case the jury sent the judge two notes that revealed its numerical division, first at nine to three for conviction, then at eleven to one. The judge took pains not to learn of these divisions by having his law clerk intercept the notes and read aloud only those portions of the notes that did not reveal the numerical divisions. However, the judge never told the jury not to reveal its numerical split, nor did he let the jury know that he had not read its notes and was unaware of the lopsided majority favoring conviction. In giving a

*Winters* instruction without doing either of these things, the judge erred.

The judge's attempt to avoid tainting the *Winters* instruction by having his law clerk intercept the jury's notes was ineffectual because he failed to let the jury know that he had not read the notes himself. Thus the jury, not being told otherwise, would most reasonably assume that the judge had read its notes and knew that a strong majority was in favor of conviction. If the jury reasonably believes that the judge knows how it is divided, regardless of the judge's actual knowledge, *any* pressure by the judge to reach a verdict—such as a *Winters* instruction—will be understood by all jurors to be directed at the minority. *See United States v. Sae–Chua, supra*, 725 F.2d at 532. Had the trial judge told the jury that he had not read the first note, which revealed the nine-to-three split, and advised them not to reveal their numerical division again, a subsequent *Winters* instruction might have been permissible. *Smith v. United States*, 389 A.2d 1356, 1361 (D.C.), *cert. denied*, 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 707 (1978). But no such amelioration was attempted; from the viewpoint of the jurors, which is all that matters in a coercion inquiry, the trial judge knew of their numerical division. The second note, showing that only one juror was holding out for acquittal, exacerbated the risk of coercion. *See Crowder v. United States*, 383 A.2d 336, 342–343 (D.C. 1978); *Lewis v. United States*, 393 A.2d 109, 113 (D.C.1978), *aff'd after remand*, 408 A.2d 303 (D.C.1979); *In re Pearson*, 262 A.2d 337, 340 (D.C.1970).

In approving a mistrial after the jury revealed its numerical division, the *Mullin* court stated, "It would have been a precarious undertaking for the Judge to give a supplemental charge to consider each other's views when he was already advised that only 4 of 12 jurors voted for acquittal." *Mullin v. United States, supra*, 123 U.S.App.D.C. at 31, 356 F.2d at 370. When we approved sending a jury back to deliberate after a note revealed they were divided eleven to one for conviction, we observed that the trial judge "was careful to give no supplemental instruction when informed of

the jury's division...." *Lewis v. United States, supra,* 393 A.2d at 113. On another occasion this court upheld the giving of a *Winters* instruction, "particularly since it was delivered before the jury's numerical division was revealed. ... We think it significant that the *Winters* charge was given well before the last note was received from the juror disclosing the jury's division." *Wilson v. United States, supra,* 419 A.2d at 357. These cases make plain that a *Winters* instruction given after the jury, intentionally or inadvertently, reveals its numerical division is not the kind of measured judicial response that the situation demands. *See Williams v. United States, supra,* 119 U.S.App.D.C. at 192–193, 338 F.2d at 532–533.

The government cites cases from other jurisdictions holding that a *Winters*-type instruction may be given after a jury reveals its numerical division. We cannot follow these cases in light of the contrary precedents in the District of Columbia. Furthermore, the cited cases are not well reasoned. For instance, in *Sanders v. United States,* 415 F.2d 621, 631–632 (5th Cir.1969), *cert. denied,* 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1970), the court found no error in a *Winters*-type instruction given after the jury revealed in a note that it was split eleven to one for conviction. There is no analysis, however, but only a citation to a case in which the jury's note did not say whether the majority favored conviction or acquittal—a critical factor under District of Columbia cases such as *Simms* and *Diggs, supra.* For the same reason, *United States v. Cook,* 663 F.2d 808 (8th Cir.1981), is not in point because the jury there did not reveal whether its ten-to-two split favored conviction or acquittal. *Id.* at 809 n. 3. The Second Circuit in *United States v. Robinson,* 560 F.2d 507 (2d Cir.1977) (en banc), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed. 2d 496 (1978), upheld a *Winters*-type instruction to a jury split eleven to one in favor of conviction, but in our view the *Robinson* court gave undue weight to the instruction's "brevity and failure to men-

tion any 'need' to reach a verdict," *id.* at 517, ignoring the factors which the Ninth Circuit found inherently coercive in *United States v. Sae–Chua, supra.* The Fourth Circuit in *United States v. Sawyers,* 423 F.2d 1335 (4th Cir.1970), upheld a *Winters*-type instruction given to a jury split ten to two for conviction. In so ruling, however, the court speculated, without foundation, that the minority might suspect the trial judge could find out their minority status if they were "fearfully inclined," so that the judge's actual knowledge of the split was "not of significance" in weighing the impact of the instruction. *Id.* at 1340. We find none of these cases persuasive.

■ The trial judge in the case at bar committed an additional error in refusing to allow defense counsel to read either note.[5] The only explanation for this puzzling refusal was the statement by the judge to counsel that the second note "will be put in the record and you'll be able to see it in due course." This gesture was plainly insufficient to cure the error because it kept from counsel the critical knowledge that each note revealed a lopsided numerical split favoring a guilty verdict. We have repeatedly held that "[a] defendant and his counsel have a right to be informed of all communications from the jury and to offer their reactions before the trial judge undertakes to respond." *Smith v. United States, supra,* 389 A.2d at 1361 (citations omitted); *accord, Roberts v. United States,* 402 A.2d 441, 443 (D.C. 1979); *Wilson v. United States, supra,* 419 A.2d at 356. The source of this right is Super.Ct.Crim.R. 43, which entitles the defendant to be present "at every stage of the trial." *See Rogers v. United States,* 422 U.S. 35, 39–40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1 (1975). While a violation of the right may in some cases be harmless error, *Kleinbart v. United States,* 426 A.2d 343, 355–356 (D.C.1981), we do not find it harmless in this case.

Although defense counsel objected to the *Winters* instruction after the second note, she requested a *Winters* instruction after the first one as an alternative to a mistrial.

5. See note 3, *supra.*

The government argues that in these circumstances appellant waived his objection or, at the very least, that we must find plain error in order to reverse. We cannot agree. Had defense counsel known what the first note said, she would surely not have requested a *Winters* instruction, given the twenty years of precedent, going back to *Mullin,* indicating that a *Winters*-type instruction must not be given in such situations. Although the trial judge may have chosen to insulate himself from knowledge of the jury's numerical division, it was error to insulate defense counsel as well.

Whenever a claim of jury coercion is raised, we will nevertheless affirm if we can "say with assurance that the jury freely and fairly arrived at a unanimous verdict." *Matthews v. United States,* 252 A.2d 505, 507 (D.C.1969). In this case we can say no such thing; coercion was probable, if not certain. Thus prejudice is presumed, and reversal is mandatory. *Morton v. United States,* 415 A.2d 800, 802 (D.C.1980).

We reiterate our firmly held view, supported by *Mullin,*[6] that trial judges should routinely instruct their juries never to reveal their numerical division in any communication with the court. Had the judge done so here, reversal might have been avoided. On the present record, however, we are convinced that appellant must have a new trial.

*Reversed and remanded.*

STEADMAN, Associate Judge, dissenting:

Although involving a *Winters* charge, this case could well be viewed as one of instructional deficiency. There seems to be general agreement that difficulty in this case could have been avoided if the trial judge had either "told the jury not to reveal its numerical split [or] let the jury know that he had not read its notes and

was unaware of the lopsided majority favoring conviction." [Majority opinion at p. 825.] It also appears that defense counsel knew of the definite probability that the notes from the jurors contained information as to the split.[1]

The failure of defense counsel to request such appropriate instructions to the jury here seems to me to lend itself to plain error analysis, along the general lines of *Allen v. United States,* 495 A.2d 1145 (D.C.1985) (en banc). I cannot so characterize the situation here in light of authority countenancing a deadlock instruction even where a jury split for conviction is specifically revealed to the trial court. *See, e.g., United States v. Robinson,* 560 F.2d 507 (2d Cir.1977) (en banc, 6–3), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed. 2d 496 (1978) (second deadlock instruction upheld after an 11–1 split for conviction, known to the trial court, continued and a signed note by the holdout juror delivered to the court).

---

6. *See also Simms v. United States, supra,* 276 A.2d at 437 n. 3.

1. In the colloquy with the court when the first deadlock note was returned, appellant's counsel asked the trial court whether the excised portion of the note referred to how the jury was split. The court answered: "I imagine it did because that's the reason I didn't look at the note."