**Edward R. JACKSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 10248.**

District of Columbia Court of Appeals.

Submitted Oct. 19, 1976.

Decided Feb. 2, 1977.

---

Frederick C. Timberlake, Washington, D.C., appointed by the court, for appellant.

Earl J. Silbert, U.S. Atty., Washington, D.C., with whom John A. Terry, William D. Pease, Donald A. Couvillon and Robert E. Hauberg, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before NEWMAN, Chief Judge, KELLY and YEAGLEY, Associate Judges.

PER CURIAM.

Appellant was convicted of a robbery at gunpoint[1] on November 15, 1974 of $1,468.61 in cash and $1,531.53 in checks from one Henry Huston and a companion, Ernest Washington, employees of Drug Fair, Inc. The robbery took place at about 7:40 p. m. while the victims were on route to deposit the store's receipts for the day in the night deposit at the Public National Bank at 12th and E. Streets, N.W. Appellant challenges in this appeal the sufficiency of the evidence to support his conviction, particularly the identification testimony, and also contends that certain supplemental jury instructions were coercive.

Our review of the record convinces us that ample probative evidence was introduced to support appellant's conviction.

We conclude, however, that the nature of instructions given by the court to the jury in a rough form of a *Winters* charge[2] requires reversal of the judgment of conviction and a remand for a new trial.

Appellant's trial started on October 1, 1975 shortly after 1:00 p. m. and continued through October 2. The jury began its deliberation at 4:42 p. m. on October 2, adjourned half an hour later, and returned for further deliberation at 10:00 a. m. on Friday, October 3. In the afternoon of October 3, the trial judge received the following note from the jury foreman:

> One of the jurors feels that a verdict in this case cannot be given. Reason: previous experience of a family member of a similar case that came to mind since commencing deliberations today.

The note disclosed a numerical split within the jury, which directly contravened the trial judge's previous instructions to the jury that if divided it should not reveal the numerical division.

The trial judge read the foreman's note in open court. He had his deputy clerk read to the jurors the oath taken on voir dire,[3] and said:

> You answered, "I will." I asked questions as to whether anyone had been arrested, in the family, regardless to what happened after that, or whether you had been a victim of a criminal offense. And we questioned the jury, and then these gentlemen before you questioned the jury.

The trial judge next had the clerk read to the jurors the oath they had taken when sworn,[4] and commented:

---

1. D.C.Code 1973, §§ 22–2901, –3202 (armed robbery).

2. *Winters v. United States*, D.C.App., 317 A.2d 530 (1974).

3. "Do you and each of you solemnly swear that you will truly answer all questions propounded to you by Court and Counsel, touching on your competency to serve as jurors in this particular case, so help you God?"

4. "Do you and each of you solemnly swear that you will make a true verdict rendered according to law and evidence, so help you God?"

And you answered, "I will." Now I am going to tell you to go back and do your job, because this is not a clear indication that somebody says they cannot. It says they feel. I am not concerned with feeling. This whole job is a dirty job. Let's be honest with it. You are supposed to find guilt or innocence here, ladies and gentlemen.

All I am asking that you do, since you sat here for two days, is do your job. Go back and commence your deliberations.

The jury returned to deliberate, reached a verdict, and just before the verdict was taken defense counsel made his objection to the court's supplemental charge of record. In the process the court remarked:

It wasn't a *Winters* charge, also not an *Allen* charge. The note said "she feels," not "she could not." I felt the reiteration of the oath they took should be able to do something. Your objection is on the record.

Immediately after this exchange the jury returned a verdict of guilty.

■ In circumstances where the foreman disclosed a numerical split within the jury to the trial judge,[5] specifying the reason for the single minority voter's position, and where it was apparent that the trial judge knew which individual was holding out,[6] it was error to direct an instruction toward that individual which intimated that she was guilty of either perjury or negligence in her response to questions on voir dire and that she was not complying with her oath as a juror. The thinly veiled directive that the jury must come to a unanimous verdict transgressed the limits of the *Winters* charge and therefore was coercive. The effect of the court's remarks was obvious.

However annoying it may have been to discover that one juror had so belatedly recalled a similar case in her family, there was no indication that the juror here in question had deliberately deceived counsel and the court on voir dire.[7] Such circumstances cannot justify pressuring the juror with the implicit threat of judicial action or at the very least displeasure should the verdict not be reached because of a disturbing recollection which restrains the juror from joining the majority position. If it were clear that the juror was incapable of fairly reaching a verdict, the court would have to have declared a mistrial. A mistrial is proper where the foreman reveals a numerical split of the jury although not solicited by the judge to do so, *Mullin v. United States*, 123 U.S.App.D.C. 29, 356 F.2d 368 (1966), and under these even more precarious circumstances, particularly in a relatively simple case which took the equivalent of one day to try, a mistrial was in order.

■ No juror should be induced to agree to a verdict by fear that a failure so to agree will be regarded as reflecting upon either his intelligence or his integrity. *Kesley v. United States*, 47 F.2d 453 (5th Cir. 1931). As the *Kesley* court said:

Much more serious is an imputation by the judge that some of the jurors are forgetting their oaths. It might even be interpreted as a threat of punishment as for contempt of court. [*Id.* at 454.]

---

5. It is error for a foreman to reveal the numerical split of the jury. *See Mullin v. United States*, 123 U.S.App.D.C. 29, 356 F.2d 368 (1966). *United States v. Jennings*, 471 F.2d 1310 (2d Cir. 1973) *cert. denied*, 411 U.S. 935, 93 S.Ct. 1909, 36 L.Ed.2d 395 (1973). However, in this jurisdiction it has been held that such a disclosure is not automatically grounds for mistrial. *United States v. Diggs*, 173 U.S.App.D.C. 95, 107, 522 F.2d 1310, 1322 (1975).

6. The judge refers to "she" when discussing the juror, although the note given the judge did not reveal that the outstanding vote was that of a woman.

7. The juror did, however, deprive the appellant of an opportunity to strike her from the jury, thus raising a question of whether the jury panel was truly unbiased.

And this type of remark by a trial judge is even more coercive and egregious when obviously directed at a particular individual identified to the court, to the parties, and to her fellow jurors. Associate Judge Gallagher in his concurring opinion in *Winters v. United States,* D.C.App., 317 A.2d 530 (1974), made clear that supplemental instructions to a hung jury must be "carefully worded and well-timed" and that it must be "made clear, in substance, that a verdict is not being demanded . . .." *Id.* at 539. Unfortunately, the trial judge in this case not only intimated that a verdict was being demanded, but he also failed to use any ameliorating language in his instruction to the effect that any change in vote had to be a conscientious one. *See United States v. Cheramie,* 520 F.2d 325 (5th Cir. 1975).

For the above compelling reasons the conviction on appeal must be reversed and the case remanded for a new trial.

*So ordered.*