George Donald WILSON, Appellant,

v.

UNITED STATES, Appellee.

No. 14227.

District of Columbia Court of Appeals.

Argued Feb. 14, 1980.

Decided June 23, 1980.

Rehearing and Rehearing En Banc
Denied Sept. 12, 1980.

John T. Hannon, Washington, D. C., appointed by the court, for appellant.

Barry M. Tapp, Asst. U. S. Atty., Washington, D. C., with whom Carl S. Rauh, U. S. Atty., Washington, D. C., at the time the brief was filed, and John A. Terry and John C. Aisenbrey, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and GALLAGHER, and PRYOR, Associate Judges.

PRYOR, Associate Judge:

Appellant, having been convicted of possession of narcotics, D.C.Code 1973, § 33–402, seeks reversal on the ground that the jury's verdict was coerced. After reviewing the record, we affirm.

I

At trial, the government relied principally upon the testimony of two plainclothes police officers. At the request of school officials of a public school in Southeast Washington, Detectives Hicks· and Green responded in the afternoon to the school in an unmarked vehicle. After a discussion with administrative persons, they ascended to an upper floor in the school and observed appellant on a street corner approximately thirty feet away. During an interval of about thirty minutes, both officers observed appellant approach three different automobiles and exchange brown manilla envelopes for undetermined amounts of money. The officers returned to their vehicle and were, according to their testimony, going to seek the assistance of uniformed officers. As they were leaving, appellant approached another vehicle which was being operated immediately ahead of them. When appellant walked up to the unmarked police car, which had stopped, Detective Green exited the vehicle and stated he was a policeman. Appellant ran, with Green in pursuit. Hicks followed in the car; he also joined the chase on foot and subsequently caught appellant and observed him throw three envelopes to the ground. There was also evidence that the envelopes contained usable amounts of marijuana.

Appellant and two other witnesses testified that he had been playing basketball on a nearby playground. Shouts from people on the playground indicating "Feds" and "Stick–up boys" prompted appellant and others to run. He acknowledged seeing drugs being sold on the corner but denied that he was a participant.

II

After argument and instruction, the case was submitted to the jury on November 6, 1978 at 11:10 a. m. Within thirty minutes the judge received a note indicating the group was unable to reach agreement. Without consulting counsel, the court assembled the jury in the courtroom:

THE COURT: Now, this is a very critical time. And, don't volunteer any information. Understand?

MR. FOREMAN: That's right.

THE COURT: All you do is answer, "yes" or "no," to my questions. If it doesn't fall into one category or the other, don't answer. All right?

MR. FOREMAN: All right.

THE COURT: Now, have you been able to reach a unanimous verdict in the case?

MR. FOREMAN: No, sir.

THE COURT: No. Now, if you were to deliberate further, do you think you could reach a unanimous verdict?

MR. FOREMAN: Possible.

THE COURT: Now, you know you haven't been in there very long.

MR. FOREMAN: No, sir.

THE COURT: Don't say anything. Let me talk. You haven't been in there very long, and I think it would do justice to everybody involved, so the case will not be tried again, that you should continue your deliberations. However, we will recess for lunch and be back here and in that room at one–forty–five. It's a quarter until two. Okay.

Now, don't talk ·about this case, until all twelve of you are together again. Can't discuss this case, so don't talk about it over lunch period, and we will see you at one–forty–five. Okay. Reconvene in that room.

After lunch, a series of events occurred in rapid succession. A clerk advised the court and counsel that a female juror had asked to be excused from the deliberations but was directed instead to return to the jury room. The court took this opportunity to discuss this event and the previous note with counsel. Counsel for appellant agreed that deliberations should continue. However, about an hour later a second note was received indicating an inability of the jury to agree. The judge was also informed that probably the same juror who had earlier asked to be excused had attempted to leave the jury room during deliberations. These matters were similarly discussed with the attorneys for both sides. The court summoned the juror, with counsel in attendance, but not in the presence of other jurors, and reminded her of her obligations:

THE COURT: Now, you understand that the alternate juror was excused from the case. We are only allowed to have twelve people in there. You understand that at the time that this jury was voir dired, or asked those questions, you were asked one question–whether anyone had any reason they could not sit on this jury panel and render a fair verdict, a fair and impartial verdict, and there was no answer from you that you couldn't. You recognize that?

THE JUROR: Yes.

THE COURT: Now, this is the first time since I have been sitting as a Judge, which is almost sixteen years, that I ever had a juror attempt to walk out of the jury room. I am not going to ask you the reason for it, but you took your solemn oath that you would do your duty as a juror, and that is what is expected of you. I would like to ask you to go back and make every attempt to deliberate.

There was no objection to this procedure. Immediately afterwards, the jury was brought into the courtroom and given an additional instruction pursuant to *Winters v. United States,* D.C.App., 317 A.2d 530 (1974). As stated, this instruction had earlier been discussed out of the jury's presence and was opposed by appellant's counsel. Finally, at about 4:05 p. m. the court received and displayed a third note to counsel:

Your Honor,

Please excuse the inconvenience. I am not able to come to a conclusion at this time. I guess you know that I am the only hold up and the rest of the jury are ready with their verdict, and it would be best for all that I be removed or given another day to decide.

After hearing the views of both sides, and over appellant's objection and request for mistrial, the jury was excused until the following day. Subsequently, a guilty verdict was returned.

### III

■ The deliberations of a jury represent a critical stage of a trial. Having heard the evidence, as presented and argued by counsel, and the court's instructions, they endeavor, in a confidential setting, to resolve the questions which have been put before them. It is the essence of the factfinding function that they should perform without coercion and a strong measure of independence. Nonetheless, it is true that while a jury is involved in deliberation an inquiry or an event may

sometimes require a judicial response. With these concerns in mind, certain general principles have become firmly established: (1) Before responding to a communication from a jury, the court should inform the accused and his counsel and permit them to state their position. *Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *Roberts v. United States*, D.C.App., 402 A.2d 441 (1979); *Smith v. United States*, D.C.App. 389 A.2d 1356 (1978). (2) Where there is an indication that a jury has not reached agreement, they should not be asked their numerical division. *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926); *Blango v. United States*, D.C.App., 335 A.2d 230 (1975). (3) Care should be taken in utilizing a supplemental charge to the jury such as the *Winters* instruction; it should only be given after considering the nature of the case and the time spent in deliberation. *See Thompson v. United States*, D.C.App., 354 A.2d 848 (1976); *Winters v. United States, supra.*

### IV

The thrust of appellant's argument is that the final note disclosing the division of the jury, when added to the other circumstances, produced a coerced verdict.

■ In reviewing the validity of a jury's verdict, we must look to the total circumstances to determine whether it was coerced. *Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965); *Nelson v. United States*, D.C.App., 378 A.2d 657, 661 (1977).

■ In this instance, the judge received the first note from the jury about one-half hour after the jury had begun its deliberations. As we have stated, the court was obliged to inform counsel before speaking to the jury on the subject. However, we have previously held that an error of this kind does not always require reversal. The question is whether appellant was prej-

udiced in a way that touches the standards by which guilt is determined, *Roberts v. United States, supra; Smith v. United States, supra.* Here the jury had not engaged in any substantial deliberations. When agreement was not reached within a brief period, this fact was communicated to the court.[1] In a careful manner designed to avoid disclosure of confidential information, the judge urged the jury to continue their efforts and immediately excused them for lunch. Indeed, after the luncheon recess when counsel were advised of the note and of the juror's contact with the clerk, the attorneys for both sides agreed that the jury should continue. We find no prejudice to appellant.

■ Confronted with the second note and the information that a juror had attempted to leave the room, we think the court's response was reasonable. In addressing the juror, out of the presence of the others, the judge was attempting to maintain the integrity and orderliness of the proceeding. In a concise way, the juror was reminded of her duties. The alternatives would have been to ignore the situation or abort the trial. We think this response by the court is supported by our decision in *Nelson v. United States, supra.* There the juror was absent from the jury room for one and one-half hours, but counsel requested the court not to question the individual regarding the circumstances. The verdict was not disturbed on the ground that no substantial prejudice resulted. We believe the same holds true in this instance, particularly where counsel did not object to the procedure employed by the court.

■ The second note,[2] similar in form to the earlier one, presented the question of whether a *Winters* instruction should be given. We have said that the use of that instruction is within the sound discretion of the trial judge. *Thompson v. United States, supra*, at 850, n.7. After conferring

---

1. The note from the foreman stated: "We, as the jurors can't come to a complete agreement on this case."

2. The second note from the foreman stated: We as the jurors still can't come to a complete agreement on this case."

with counsel, and taking into account the straightforward questions of fact which had been presented to the jury and the short time which they had deliberated, a *Winters* instruction was given over the objection of appellant. The use of the instruction was within the ambit of the court's discretion. Indeed, our description of the jury in *Thompson, supra,* at 850 is apt:

> It appears from the record that this jury was given to rather short deliberation spans before reporting an inability to reach a verdict. The time spent in deliberation in this case was not prolonged, especially at the point the jury first began announcing its inability to reach a verdict . . .

Given this situation, the instruction was not error, particularly since it was delivered before the jury's numerical division was revealed.

 When the last note was received, the jury had deliberated for approximately four hours–one hour after the supplemental *Winters* charge. While the juror revealed the numerical division within the jury, that disclosure was not, of course, elicited by the court nor counsel. Under such circumstances, no mistrial is required; the question of continued deliberation is left to the discretion of the court. *United States v. Diggs,* 173 U.S.App.D.C. 95, 107, 522 F.2d 1310, 1322 (1975); *see also Jackson v. United States,* D.C.App., 368 A.2d 1140 (1977). Perhaps more important than the disclosure itself, is the court's reaction to it. If the judicial response is coercive in nature, a subsequent conviction cannot stand. Thus, in *Jenkins v. United States, supra,* when a jury expressed its inability to agree and the judge stated, among other things, "You have got to reach a decision in this case,"

the conviction was overturned. Similarly, in *Jackson v. United States, supra,* we reversed for precisely that reason. After being apprised of the jury's numerical division, the trial judge also made comments which were deemed coercive.

Thus, the critical aspect of this case is whether the judge's response to the final communication, in light of the preceding circumstances, was an exercise of discretion which was coercive to the jury's verdict. We think it significant that the *Winters* charge was given well before the last note was received from the juror disclosing the jury's division. In response to the note, the court excused the jury, without any substantial discourse until the following day. This was a measured response. No statement was made which could be characterized as an overreaction. Viewed in conjunction with the other circumstances which have been recounted, we do not find the decision to allow the jury to continue deliberations an abuse of discretion which, in turn, coerced this verdict.[3]

Accordingly, we affirm.

*Affirmed.*

GALLAGHER, Associate Judge, concurring:

I concur and offer a few brief comments. It seems to me that, cutting through to the bone of the case, it was simply a situation where due to the theatrics of one juror a vote by the entire jury was being held up. The dissent is inaccurate in referring to the juror as a "hold out." The actuality is that she was delaying things by not facing up to her duty to cast her vote.

While it goes without saying that all criminal cases are serious, the fact remains

---

**3.** Contrary to the dissenting opinion, we view our holding as consistent with a recent decision, *Morton v. United States,* D.C.App., 415 A.2d 800 (1980). In that case the conviction was reversed where a juror's brother died during the course of deliberations. The juror, after inquiry by the court, agreed to continue deliberating. No verdict was reached on that date. However, a *Winters* instruction was given on the following day. In setting aside the verdict, we held that "events extraneous to proof in the case (here, the death of the juror's brother)" raised a substantial possibility of a coerced verdict. In the instant case, there were no external factors bearing on the jurors. Rather, this case involves a jury's decision based solely on the proof offered at trial. We find no extraneous event nor action by the court which coerced the jury's verdict. In this case, the juror gave no cognizable reason for not casting a vote one way or the other.

that, relatively speaking, this was an uncomplicated, minor criminal case involving a charge of marijuana possession. The trial judge was simply attempting to get the difficult juror to do her job. This culminated in this note which the court received from her.

Your Honor,

Please excuse this inconvenience because I am not able to come to a conclusion at this time, I guess you know that I am the only *hold up* and the rest of the jury are ready with their verdict and it would be best for all that I be removed or *given another day to decide*. (Emphasis supplied).

It being late in the afternoon, the court excused the jury until the following day. Early the next morning the jury returned a guilty verdict. I see nothing in this case which sanctions coercion. We are simply affirming the effort of the seasoned, experienced trial judge to do a conscientious job in running his courtroom in a sensible way.

NEWMAN, Chief Judge, dissenting:

The sole issue before us is whether the trial court's actions and remarks directed to the jury resulted in a verdict that was coerced. I dissent because I believe that the trial court's harsh comments admonishing a particular juror, who had previously requested to be excused, had attempted to leave in the midst of deliberations, and who was a member of a panel which had already indicated on two different occasions its inability to reach a decision, resulted in a verdict that was coerced. An examination of the specific communications between the jury and trial court is crucial to this case.

I

At approximately 11:30 a. m. Monday, November 6, 1978, about 20 minutes after deliberations had begun, the jury sent out its first note indicating that it could not reach a verdict. The communication was ignored until 12:28 p. m., when the trial court, without notifying appellant or his counsel, had the jury brought into the courtroom. At that time, the judge recessed for lunch and encouraged the jurors to continue their deliberations after the break.

When the court reconvened at 1:50 p. m., the clerk informed the court, in the presence of appellant and his counsel, that one of the jurors had approached him asking to be excused and indicating that she did not "think the jury would come back with any kind of verdict." [Tr. 3] The clerk explained that he told the juror "there was no way" she could be excused and instructed her to return to the jury room. Both parties at this juncture agreed that the jury should continue to deliberate. The court also advised appellant of the first jury note and the instructions that had been given prior to lunch.

The court reconvened with all the parties at approximately 3:00 p. m., after receiving a second note from the jury expressing an inability to agree. The court also informed counsel that a juror had attempted to leave the jury room and had to be escorted back by the Marshal. In explaining the situation and offering his impressions to counsel, the court commented:

I can hear them [the jurors] mumbling and going on here, and they have stopped mumbling, which means—*And then we have that same juror* that is trying to walk out of there, and it doesn't make for a good jury for anybody really. The Marshal had to put her back in.

\* \* \* \* \* \*

I think things are rather unsettled. *I don't think you will get a good decision out of this group.* (Emphasis added.)

Counsel for the appellant immediately moved for a mistrial while the government attorney requested that a *Winters* instruction be given. Without ruling on the motions, the trial court stated:

Well, I don't think that Winters is the answer. I don't mind giving Winters, but I don't think it is the answer. *I think there is something basically wrong with one or two of these jurors.* That is what I think. *They are not going to come out with anything.* (Emphasis added.)

In an attempt to make a determination as to whether the *Winters* instruction should be given, the judge summoned the juror who had attempted to leave the deliberations and placed her on the witness stand for questioning. The following exchange occurred:

THE COURT: *I'm a little disturbed.* There seems to be some trouble going on in the room. The report is that you tried to walk out of that room. Just answer yes or no.

THE JUROR: Yes.

THE COURT: You also, I understand, had a question asked of the court room Clerk, Mr. Overholser.

THE JUROR: Yes.

THE COURT: When you first went out.

THE JUROR: Yes.

THE COURT: *Now, you understand that the alternate juror was excused from the case, We are only allowed to have twelve people in there. You understand that at the time that this jury was voir dired, or asked those questions, you were asked one question—whether anyone had any reason why they could not sit on this jury panel and render a fair verdict, a fair and impartial verdict, and there was no answer from you that you couldn't. You recognize that?*

THE JUROR: Yes.

THE COURT: *Now, this is the first time since I have been sitting as a Judge, which is almost sixteen years, that I have ever had a juror attempt to walk out of the jury room.* I am not going to ask you the reason for it, but you took your solemn oath that you would do your duty as a juror, and that is what is expected of you. I would like to ask you to go back and make every attempt to deliberate.

On the other hand, I am giving an additional instruction. You have a seat right there, and we'll get the others out. I don't want you to volunteer anything. I am not in a position to settle what your problem is. You just have a seat over there. We are going to get the rest of the jurors out.

[DEFENSE COUNSEL]: Your Honor, I want to save my objection.

THE COURT: Yes, you can have your objection. Is that what you want?

[DEFENSE COUNSEL]: Yes.

[PROSECUTOR]: Should the juror remain?

THE COURT: He is just objecting to the Winters. I know why.[1] (Emphasis added.)

The remaining jurors returned to the courtroom at 3:05 p. m., and the *Winters* instruction was given.

At 4:05 p. m., the court again reconvened and informed appellant and his counsel that it had received yet a third note from the jury. The third note indicated:

Your Honor, please excuse the inconvenience. I am not able to come to a conclusion at this time. I guess you know that I am the only hold up, and the rest of the jury are ready with their verdict, and it would be best for all that I be removed or given another day to decide.

Appellant's counsel again moved for a mistrial, but the jury was excused until the next morning. Within one hour of returning the next day, the jury announced a verdict of guilty.

II

On several previous occasions we have analyzed a trial judge's instructions to a jury, and yet the majority ignores the case which is clearly most analogous to this one. In *Jackson v. United States*, D.C.App., 368

---

1. The majority maintains that appellant did not specifically object to the court's reprimanding the juror. The majority, however neglects to note that the "troublesome juror" was specifically called into the courtroom for questioning so that the judge could rule on appellant's motion for a mistrial and the government's request for a *Winters* charge. Thus, since appellant's motion for a mistrial was still pending at the time of the inquiry, there was no reason to lodge another objection in the midst of the questioning. When it immediately became apparent, however, that the court was going to give the *Winters* charge, appellant again objected.

A.2d 1140 (1977), we reversed a conviction for armed robbery when a trial judge improperly commented to the jury after receiving a note that indicated a numerical split and expressed a juror's inability to reach a verdict because of a recollection regarding a family member. In *Jackson*, the trial court, after receiving only its first note, had the clerk read the oaths taken by the jurors and commented:

> And you answered, "I will." Now, I am going to tell you to go back and do your job, because this is not a clear indication that somebody says they cannot. It says they feel. I am not concerned with feeling. This whole job is a dirty job. Let's be honest with it. You are supposed to find guilt or innocence here, ladies and gentlemen. [*Jackson v. United States, supra* at 1142.]

We found those comments to be coercive and specifically stated:

> [W]here it was apparent that the trial judge knew which individual was holding out, it was error to direct an instruction toward that individual which intimated that she was guilty of either perjury or negligence in her response to questions on voir dire and that she was not complying with her oath as a juror. . . .
>
> However annoying it may have been to discover that one juror had so belatedly recalled a similar case in her family, there was no indication that the juror here in question had deliberately deceived counsel and the court on voir dire. Such circumstances cannot justify pressuring the juror with the implicit threat of judicial action or at the very least displeasure should the verdict not be reached because of a disturbing recollection which restrained the juror from joining the majority position. If it were clear that the juror was incapable of fairly reaching a verdict, the court would have to have declared a mistrial. [*Id.* (footnotes omitted).]

Here, the facts are even more egregious than in *Jackson*. First, in this case the "troublesome juror" did not merely express a "feeling" that she was unable to deliber-

ate, but specifically requested to be excused from the panel, maintained that a verdict could not be reached, and attempted to leave the jury deliberations. These actions unequivocally indicate her conviction that she could not arrive at a verdict. Second, the trial judge clearly acknowledged that he was aware of the holdout as indicated by his in-court inquiry of her. Third, the words uttered by the trial judge are undeniably harsher than those spoken in *Jackson*. The trial judge not only reminded the juror that she in fact had taken an oath which indicated her ability to deliberate and that there was no one who could replace her, but reprimanded her by stating, "this is the first time since I have been sitting as a Judge, which is almost sixteen years, that I have ever had a juror attempt to walk out of a jury room." Finally, it should be noted that although the trial court's comments in *Jackson* were spoken to the entire jury, we stated that "this type of remark by a trial judge is even more coercive and egregious when obviously directed at a particular individual identified to the court, to the parties, and to her fellow jurors." *Jackson, supra* at 1143. Here, the trial court singled out the "troublesome juror," placed her on the witness stand, and directed its harsh remarks exclusively at her. Thereafter, the remaining jurors were called into the courtroom and the *Winters* charge given over defense objection. Thus, *Jackson* clearly mandates that we find the trial court's instructions coercive and reverse the conviction.

The majority also suggests that *Nelson v. United States*, D.C.App., 378 A.2d 657 (1977), supports its decision. A fair reading of that case indicates that it does not. In *Nelson*, a juror separated herself from the deliberations for approximately one hour and a half and the trial judge then proceeded to lecture the panel on the necessity of reaching a verdict. Although we upheld the conviction, we made clear that our decision was substantially governed by the fact that defense counsel not only failed to object, but encouraged the court to continue deliberations. In expressing disapproval of the trial court's comments, we stated:

The record indicates that shortly before the instruction was given, the trial court was disposed to declare a mistrial. *It was only after repeated requests by defense counsel for a stronger anti–deadlock charge that the court finally made the challenged remarks.* Presumably, defense counsel believed that the jury was about to acquit their clients. *The instruction was not directed to any particular juror,* and it appears that its effect was attenuated because the panel was discharged for the rest of the day and did not reach its verdict until late the following afternoon. Although we are troubled by the language used by the court, we are not persuaded that the instruction, when viewed "in its context and under all the circumstances" rose to the level of the plain error. [*Nelson v. United States, supra* at 661.]

But for the explicit request of the defendant in *Nelson,* it is clear that we would have reversed. Where, as here, there was strong objection by the defendant,[2] the majority's reliance on *Nelson* is misplaced.

Furthermore, the majority's opinion is also in contravention of a case recently decided by this court, *Morton v. United States,* D.C.App. 415 A.2d 800 (1980). In *Morton,* we held that the participation of a juror in deliberations after she requested to be excused because of her brother's death followed by a *Winters* instruction created a sufficient possibility of a coerced verdict. Despite the fact the juror indicated that she *was able* to continue in the midst of emotional strain, we found that there was "a substantial risk of a coerced verdict . ." *Morton, supra* at 802. In addition, we noted that although it is not necessarily error to give the *Winters* charge, under these circumstances "the timing of the instruction could have well implied that a verdict was being demanded before the juror would be excused to attend to her personal business." *Id.* at 803.

All those things which led to the reversal in *Morton* exist here–*plus more.* Unlike *Morton,* the juror here indicated an unwillingness to continue. This was coupled with the judge's admonishing remarks in this case which did not occur in *Morton.*

The constitutional guarantee of trial by jury contemplates a jury free of judicial or other coercion. Recent events in the Superior Court reflect the unfortunate consequences of jurors feeling themselves unduly coerced.[3] I find it a sad day when this court sanctions such coercion. I dissent.[4]

2. *See* note 1, *supra.*

3. See Washington Post, April 17, 1980, § C (Metro), at 1, col. 1, reporting a fight between two or more jurors during deliberation. The trial judge in that case, showing proper sensitivity, declared a mistrial upon defendant's request.

4. Contrary to the concurrence, "cutting through to the bone of the case," the issue is not whether the "theatric[al]" juror was a "hold out" or a "hold up". It is not whether the case was "an uncomplicated, minor, criminal" one. Nor does the issue turn on the measure of our esteem for "the seasoned, experienced trial judge." The issue, simply stated, is whether appellant was deprived of his Sixth Amendment rights to a trial by a jury free of coercion.